

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-11-00005-CV

TEXAS REAL ESTATE COMMISSION

APPELLANT

V.

JOYCE I. BAYLESS

APPELLEE

----------

## FROM THE 141ST DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

### I. INTRODUCTION

Appellant Texas Real Estate Commission (TREC) appeals an order directing it to pay $50,000 from the Real Estate Recovery Trust Account (the "trust account") to Appellee Joyce I. Bayless. The primary issue that we address in this appeal is whether the two-year limitations period in occupations code section 1101.605(a) applies to an action against a real estate license holder upon

which an uncollectible judgment is based or to a verified claim for payment from the trust account of the unpaid amount of the uncollectible judgment. *See* Tex. Occ. Code Ann. § 1101.605(a) (West 2004). We hold that section 1101.605(a) applies to an action against a real estate license holder upon which an uncollectible judgment is based. Therefore, we will reverse and render.

## II. BACKGROUND

Bayless filed her original petition against Jack Erwin Bunton in May 2008. In an amended pleading, she alleged that in May 2006, TREC determined that Bunton was guilty of engaging in "misrepresentation or dishonest or fraudulent action when selling real property in his own name in violation of . . . §1101.652(a)(3) of the Texas Occupations Code." TREC revoked Bunton's real estate broker license and made supporting fact findings, including the following: on or about August 29, 2002, Bunton executed a contract for the sale of real property to Bayless; Bunton made false representations to Bayless that there were no liens against the property; Bayless made a $30,000 down payment on the seller-financed purchase of the property, took possession of the property, and made monthly payments to Bunton; Bayless began receiving notices of foreclosure of the property from a financial institution that held an undisclosed mortgage on the property; Bunton did not make any payments on the undisclosed mortgage and retained all of the funds that Bayless paid to him; Bayless agreed to pay the financial institution an additional $30,000, but the property was foreclosed on in February 2004; and Bunton's misrepresentations,

2

dishonesty, and fraud caused Bayless to lose $37,524.66. Bayless alleged claims against Bunton for common law and statutory fraud and for violations of occupations code section 1101.652(a)(3) and the DTPA, and she sought damages of $37,524.66 and attorney's fees.

Bayless moved for summary judgment on her claims against Bunton and on Bunton's counterclaims against her. The trial court granted Bayless's motions for summary judgment and in April 2010, awarded her damages in the amount of $37,534.66; exemplary damages in the amount of $5,000; attorney's fees in the amount of $10,000; and prejudgment and postjudgment interest.

Approximately five months later, in September 2010, Bayless filed a claim and application for an order directing a payment from the trust account. She alleged that she had given notice of the claim to TREC, that she had obtained a final judgment against Bunton based on his commission of acts constituting a violation of occupations code section 1101.652(a)(3), that a writ of execution was issued but returned nulla bona, and that she had caused to be issued an abstract of judgment and perfected a judgment lien. Bayless prayed that the trial court enter an order directing TREC to pay to her "an amount found to be payable on the claim" from the trust account.

TREC objected to Bayless's application for an order directing a payment out of the trust account, arguing that the claim is time-barred under occupations code section 1101.605(a), which, according to TREC, required Bayless to bring her underlying suit against Bunton no later than two years from February 2004,

3

the date of the subject property's foreclosure. TREC argued that Bayless could not recover from the trust account because the limitations period had expired when she sued Bunton more than two years after February 2004. After a hearing, the trial court denied TREC's challenge and ordered it to pay Bayless $50,000 from the trust account. TREC appeals.

### III. SECTION 1101.605(a)

In its only issue, TREC argues that the two-year limitations period in section 1101.605(a) applies to an action against a real estate license holder upon which an uncollectible judgment is based. Therefore, TREC contends that the trial court erred by ordering TREC to pay Bayless $50,000 from the trust account because the limitations period expired several years before Bayless brought suit against Bunton in May 2008. In addition to several other arguments, Bayless replies that section 1101.605(a) instead applies to a claim against the trust account for payment of the unpaid amount of an uncollectible judgment and that the limitations period accrues once (1) a final judgment in the underlying suit is entered, (2) a writ of execution is returned nulla bona, and (3) a judgment lien is perfected, as section 1101.606(a) contemplates. Because she sought payment from the trust account within two years of meeting section 1101.606(a)'s claim-filing prerequisites, Bayless contends that the trial court did not err by ordering a payment from the trust account. TREC confirmed at the hearing on Bayless's application that its sole challenge to her claim was its limitations argument.

4

## A.     Standard of Review and Statutory Construction

Statutory construction is a question of law that we review de novo.  *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002).  In construing a statute, our primary objective is to determine and give effect to the legislature's intent, which we do by looking to the plain and common meaning of the statute's words, unless such a construction leads to an absurd result.  *Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838, 842 (Tex. 2009); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625–26 (Tex. 2008).  Disputed provisions of a statute are to be considered in context, not in isolation.  *Harris Cnty. Hosp. Dist.*, 283 S.W.3d at 842.  Further, if a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity:

> There are sound reasons we begin with the plain language of a statute before resorting to rules of construction.  For one, it is a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent.  Also, ordinary citizens should be able to rely on the plain language of a statute to mean what it says.  Moreover, when we stray from the plain language of a statute, we risk encroaching on the Legislature's function to decide what the law should be.

*Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 866 (Tex. 1999) (citations omitted); *see Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 652 n.4 (Tex. 2006) (stating that "[i]f the text is unambiguous, we must take the Legislature at its word and not rummage around in legislative minutiae").

5

## B. The Trust Account

The Real Estate License Act (the RELA) is found in chapter 1101 of the occupations code. *See* Tex. Occ. Code Ann. §§ 1101.001–.806 (West 2004 & Supp. 2010). Its overall purpose is "to eliminate or reduce fraud that might be occasioned on the public by unlicensed, unscrupulous, or unqualified persons," and it contains seventeen subchapters addressing matters ranging from the meaning of "broker" to the liabilities of a broker. *Henry S. Miller Co. v. Treo Enters.*, 585 S.W.2d 674, 675–76 (Tex. 1979); *see* Tex. Occ. Code Ann. §§ 1101.001, .801–.806.

TREC is charged with the administration and enforcement of the RELA. *See Tex. Real Estate Comm'n v. Nagle*, 767 S.W.2d 691, 693 (Tex. 1989); *see also* Tex. Occ. Code Ann. § 1101.151. Among other responsibilities, TREC must "maintain a real estate recovery trust account." Tex. Occ. Code Ann. § 1101.601(a). The purpose for the trust account, which is funded in part by license and certificate of registration fees, "is to reimburse persons who have been damaged by certain acts of a real estate broker or salesman, but who cannot collect their damages from the broker." *Nagle*, 767 S.W.2d at 693; Tex. Occ. Code Ann. § 1101.603(a)–(c).

Under subchapter M of the RELA, "an aggrieved person who obtains a court judgment against a license or certificate holder for an act described by

6

Section 1101.602[1] may, after final judgment is entered, execution returned nulla bona, and a judgment lien perfected, file a verified claim in the court that entered the judgment." Tex. Occ. Code Ann. § 1101.606(a). After twenty days' notice of the "claim" to TREC and the judgment debtor, the aggrieved person "may apply to the court that entered the judgment for an order for payment from the trust account." *Id.* § 1101.606(b). A hearing is conducted on the application, and TREC may "appear at the hearing, defend the action, or take any other action the commission considers appropriate," but it may do so only to "ensure compliance with the requirements for recovery under this subchapter" or to "protect the trust account from spurious or unjust claims." *Id.* § 1101.608(a), (b). The trial court "shall order" TREC "to pay from the trust account the amount the court finds payable on the claim" if the court is satisfied about the matters detailed in section 1101.609(1) and (2). *Id.* § 1101.609.

### C.    Section 1101.605(a) Applies to an Underlying Action Upon Which an Uncollectible Judgment is Based

Section 1101.605(a), titled in part, "Deadline for Action," provides that "[a]n action for a judgment that may result in an order for payment from the trust account may not be brought after the second anniversary of the date the cause of action accrues." *Id.* § 1101.605(a). When we consider the words that the

---

[1]"An aggrieved person is entitled to reimbursement from the trust account if a person described by Section 1101.601 engages in conduct described by Section 1101.652(a)(3) . . . ." Tex. Occ. Code Ann. § 1101.602. Section 1101.652(a)(3) refers to "misrepresentation, dishonesty, or fraud when selling . . . real property" in the license holder's own name. *Id.* § 1101.652(a)(3).

legislature chose there in light of the language used in other statutes contained in subchapter M of the RELA, as we must, we observe (1) that the legislature consistently used the term "judgment" to refer to the final judgment that an aggrieved person must obtain against a license or certificate holder before filing a claim against the trust account, (2) that the legislature used the term "claim" to refer to a verified claim that an aggrieved person must file after a final judgment is entered in order to recover from the trust account, and (3) that the legislature used the term "order" to refer to the order for payment from the trust account that an aggrieved person must apply for after giving notice to TREC and the judgment debtor of the claim against the trust account. *See id.* §§ 1101.606, .607, .609, .610, .611; *see also TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011) ("It is a fundamental principle of statutory construction and indeed of language itself that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used."). The legislature did not substitute the term "claim" for the term "judgment" in any part of subchapter M, nor did the legislature use the term "judgment" in any context other than to refer to the final judgment that an aggrieved person must obtain against a license or certificate holder before filing a claim against the trust account. The legislature also did not use the term "order" in any context other than to refer to the order for payment from the trust account that an aggrieved person must apply for after giving notice to TREC and the judgment debtor of the claim against the trust account. Therefore, we must construe the term

"judgment" as it is used in section 1101.605(a) to refer to a final judgment that an aggrieved person must obtain against a license or certificate holder before filing a claim against and application to recover from the trust account.

Another operative term in section 1101.605(a) is "action." Section 1101.608(c) also uses the term "action," and it provides that "[t]he commission may relitigate in the hearing any material and relevant issue that was determined in the *action* that resulted in the *judgment* in favor of the aggrieved person." Tex. Occ. Code Ann. § 1101.608(c) (emphasis added). The legislature thus used the term "action" in section 1101.608(c) to refer to the underlying cause of action against the license or certificate holder that resulted in the final judgment in favor of the aggrieved person. The legislature used the term "action" twice in section 1101.605(a), once even in conjunction with the term "judgment." *Id.* § 1101.605(a). We therefore construe the term "action" in section 1101.605(a) to refer to the underlying cause of action against the license or certificate holder that resulted in the final judgment in favor of the aggrieved person.

Section 1101.605(a) goes on to describe the term "judgment" as one "that may result in an order for payment from the trust account." *Id.* Sections 1101.606 and 1101.607 reveal exactly what the legislature intended by including such a description. Under those statutes, a judgment "that may result in an order for payment from the trust account" is one in which a person (1) obtains a final judgment against a license or certificate holder for an act described by section 1101.602; (2) files a claim against the trust account after the execution is

9

returned nulla bona and a judgment lien is perfected; (3) applies for an order for payment from the trust account after notice to TREC and the judgment debtor; and (4) attempts to show at the hearing on the application the matters described by section 1101.607 to the satisfaction of the trial court. *See id.* §§ 1101.606(a), .607, .609. There is no reason to speculate about the legislature's intent when it described the term "judgment" in section 1101.605(a) as one "that may result in an order for payment from the trust account."

In addition to the actual words chosen by the legislature, interpreting section 1101.605(a) one way over the other affects the meaning of several other statutes contained in subchapter M of the RELA. For example, section 1101.605(b) describes a license or certificate holder as a person "against whom the action is brought," but section 1101.606(b) alters that description to refer to a license or certificate holder as a "judgment debtor." Construing section 1101.605(a) to apply to an action against a real estate license or certificate holder upon which an uncollectible judgment is based, as TREC contends, comports with the legislature's decision to refer to the license or certificate holder as a person "against whom the action is brought" in section 1101.605(b) because, at that point in time—when "an aggrieved person brings an action for a judgment that may result in an order for payment from the trust account" against the license or certificate holder—he is merely a person who has been sued; there is no judgment entered against him yet. But after a final judgment has been obtained, execution has been returned nulla bona, a judgment lien has been

10

perfected, and an application to recover from the trust account has been filed, the license or certificate holder is no longer just someone "against whom the action is brought"; he is instead now a "judgment debtor." The legislature's decision to implement chronologically varying descriptions of the license or certificate holder is rendered meaningless if we construe section 1101.605(a) as applying to a claim against the trust account for payment of the unpaid amount of an uncollectible judgment, as Bayless argues.

Another result of interpreting section 1101.605(a) one way over the other concerns how notice is given. Both subsections (a) and (b) of section 1101.605 contain the identical language "an action for a judgment that may result in an order for payment from the trust account." *Id.* § 1101.605(a), (b). Therefore, whether we adopt TREC's proposed construction or Bayless's proposed construction of section 1101.605(a), that same construction should be given to the identical language found in subsection (b). *See Lewis v. Funderburk*, 253 S.W.3d 204, 207–08 (Tex. 2008) (holding that legislature's use of terms "has not been served" applies equally to cases in which a report has been served but is inadequate). Construing section 1101.605(a) to apply to an action against a real estate license or certificate holder upon which an uncollectible judgment is based, as TREC contends, means that, under subsection (b), the license or certificate holder against whom an action is brought must notify TREC of the action when it is brought—at the outset of the underlying action. *Id.* § 1101.605(b). Then, under section 1101.606(b), after obtaining a final

11

judgment, when the aggrieved person files a verified claim against the trust account, he—not the license or certificate holder—must give notice of the claim to both TREC and the judgment debtor. *Id.* § 1101.606(b). Under Bayless's proposed construction of section 1101.605(a), however, there is no provision for notice to TREC at the outset of the underlying action, and both the license or certificate holder and the aggrieved person must give notice to TREC when a verified claim is filed against the trust account. Unlike Bayless's construction, TREC's construction of section 1101.605(a) accounts for notice to TREC at all stages of the litigation contemplated by subchapter M and does not result in redundant notices of the same claim against the trust account being given to TREC by both the license or certificate holder and the aggrieved person.

In *Williams v. Khalaf*, the supreme court cited the predecessor statute of section 1101.605(a) in a footnote and stated in a parenthetical, "limitations period of two years for collection from real estate recovery fund." 802 S.W.2d 651, 654 n.3 (Tex. 1990). The supreme court, however, did not perform a statutory construction of the statute, and we decline to consider its statement in the footnote as binding precedent that the legislature intended section 1101.605(a) to apply to a claim against the trust account for payment of the unpaid amount of an uncollectible judgment, to the extent it can be construed as such.

Bayless argues that TREC is prohibited from raising a limitations challenge on appeal because it merely raised a jurisdictional challenge to Bayless's claim against the trust account. TREC filed a pleading challenging Bayless's right to

12

recover from the trust account on the ground of limitations. It is the same argument that TREC now raises on appeal. That TREC captioned the pleading a "plea to the jurisdiction" does not affect the nature of the complaint raised therein. *See State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) ("We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it.").

Bayless further argues that TREC's issue should be overruled because it "failed to offer any evidence by way of oral testimony, discovery, affidavits, exhibits or stipulations in support of the affirmative defense of limitations" at the trial court. TREC filed a pleading with supporting exhibits challenging Bayless's claim against the trust account, and the trial court held a hearing on the matter, considered TREC's arguments, and ruled in favor of Bayless. TREC thus defended the trust account against Bayless's claim, as section 1101.608(a) contemplates. *See* Tex. Occ. Code Ann. § 1101.608(a).

Relying on occupations code section 1101.608(c), Bayless also argues that TREC's limitations challenge must fail because "TREC has no statutory right to re-litigate an issue that was not decided in the underlying action." As noted, section 1101.608(c) provides that "[t]he commission may *relitigate* in the hearing any material and relevant issue that *was determined* in the action that resulted in the judgment in favor of the aggrieved person." Tex. Occ. Code Ann. § 1101.608(c) (emphasis added). Bayless seems to contend that because the limitations argument that TREC now raises on appeal was *not* determined during

13

the underlying action against Bunton, then TREC was prohibited from raising the limitations argument in its challenge to Bayless's claim against the trust account. But section 1101.608(c) merely permits TREC to relitigate a material and relevant issue that was determined in the action against the license or certificate holder. It does not prohibit TREC from raising matters in response to Bayless's claim against the trust account if those matters were not determined in the underlying action against the license or certificate holder. Indeed, in *Nagel*, the supreme court recognized that "seldom will direct intervention [by TREC] be possible. [TREC] ordinarily will be relegated to a post-judgment hearing." 767 S.W.2d at 694–95. Prohibiting TREC from raising an issue in the hearing on Bayless's application for payment that was not determined in the action against the license or certificate holder would deprive TREC of the opportunity to comply with its statutory obligation under section 1101.608(b).

Bayless contends that TREC's construction of section 1101.605(a) would lead to absurd results, "thwart the legislative purpose," and "create financial uncertainty and chaos" for the trust account. We do not see that happening. Construing section 1101.605(a) to apply to an action against a real estate license or certificate holder upon which an uncollectible judgment is based provides uniformity for all claims against a license or certificate holder that may result in an order for payment from the trust account because it requires that those claims be brought within two years of the date the actions accrue. To the extent Bayless relies on the considerations detailed in government code section 311.023 to

14

support her construction of section 1101.605(a), "[w]hen a statute's language is clear and unambiguous, it is inappropriate to resort to rules of construction or extrinsic aids to construe the language." *See City of Rockwall*, 246 S.W.3d at 626; *see also Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011).

Accordingly, construed in context, the plain and common meaning of the terms used in section 1101.605(a) suggest that the legislature intended for the statute to apply to an "action" against a real estate license or certificate holder upon which an uncollectible "judgment" is based. If the legislature had instead intended for section 1101.605(a) to apply to a claim against the trust account for payment of the unpaid amount of an uncollectible judgment and for the limitations period to accrue once a final judgment in the underlying action is entered, a writ of execution is returned nulla bona, and a judgment lien is perfected, then it could have simply stated as much, but it did not, and we must presume that the legislature chose the words that it used for a purpose, and we must not engage in a forced or strained construction of the statute. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) (reasoning that every word of a statute must be presumed to have been used for a purpose, and every word excluded from a statute must be presumed to have been excluded for a purpose). Because the limitations period to bring "[a]n action for a judgment that may result in an order for payment from the trust account" expired, at the latest, several years before Bayless brought suit against Bunton in May 2008, she failed to comply with

15

section 1101.605(a)'s two-year limitations requirement, and she therefore may not recover from the trust account. We sustain TREC's only issue.

## IV. CONCLUSION

We reverse the trial court's order directing TREC to pay Bayless $50,000 out of the trust account and render judgment that Bayless take nothing on her claim against the trust account.

BILL MEIER
JUSTICE

PANEL: WALKER, MEIER, and GABRIEL, JJ.

DELIVERED: April 19, 2012

16