

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00199-CV

_____

TEXAS REAL ESTATE COMMISSION, Appellant

V.

PAUL MURPHY, Appellee

On Appeal from County Court at Law No. 2
Tarrant County, Texas
Trial Court No. 2016-000685-2

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant Texas Real Estate Commission (TREC) challenges the trial court's order directing payment to Appellee Paul Murphy out of the real estate recovery trust account (the fund) maintained by TREC. *See* Tex. Occ. Code Ann. § 1101.601. TREC is statutorily required to maintain the fund to "reimburse aggrieved persons who suffer actual damages" caused by certain actions by licensed real estate brokers. *See id.* Murphy obtained a judgment against a license holder, and after attempting unsuccessfully to collect the judgment, Murphy applied to the trial court for an order directing TREC to pay the judgment out of the fund. *See id.* § 1101.606. After a hearing, the trial court signed the requested order, and TREC now appeals.

In three issues, TREC argues that the trial court erred by ordering payment from the fund because the judgment on which the order is based was not a final judgment; that even if ordering payment of part of the judgment was proper, ordering payment of the judgment's mental anguish damages was not; and that the trial court erred by ordering payment of attorney's fees and prejudgment interest calculated at eighteen percent. In his appellee's brief, Murphy raises a cross-point asserting that TREC's appeal is moot because he assigned the underlying judgment to TREC as he is required to do before TREC may pay him from the fund. *See id.* § 1101.612.

We will affirm the judgment in part and reverse and remand in part. The trial court's order is based on a final judgment, TREC's appeal is not moot, and the trial court was authorized to award Murphy—an attorney representing himself—his

attorney's fees. We therefore affirm in part. However, mental anguish damages may not be paid out of the fund, and the trial court miscalculated the amount of prejudgment interest, so we will reverse in part and remand for a new calculation of prejudgment interest.

## I. Background

In 2016, Murphy sued Jason Light, Individually and d/b/a The Light Realty Group and Allstar Locators (Light) and Latter & Blum of Texas, L.L.C. d/b/a Realty Associates (Realty Associates) on claims related to Murphy's house purchase. Murphy alleged that Light had agreed to pay him all but $200 of the commission from the purchase; that closing occurred in December 2013; and that the defendants had refused to pay him the $10,769.50 that he was owed. *See* 22 Tex. Admin. Code § 535.147(d). Murphy sued for breach of contract, breach of fiduciary duty, fraud, conversion, and unjust enrichment. Murphy also pled statutory fraud in a real estate transaction, *see* Tex. Bus. & Com. Code Ann. § 27.01, and violations of the Deceptive Trade Practices Act, *see id.* § 17.41, for which he sought attorney's fees and exemplary damages. As part of his DTPA claim, he further asserted that he was entitled to mental anguish damages.

In 2017, the trial court signed a post-answer default judgment against Light and Realty Associates (the 2017 Judgment). The 2017 Judgment awarded $10,769.50 in economic damages, $20,000 in mental anguish damages, $61,539 in exemplary damages, and $6,053.22 in attorney's fees.

3

Based on lack of service, this court reversed the judgment as to Realty Associates and remanded for further proceedings. *See Latter & Blum of Tex., LLC v. Murphy*, No. 02-17-00463-CV, 2019 WL 3755765, at *9 (Tex. App.—Fort Worth Aug. 8, 2019, pet. denied) (mem. op.). The judgment against Light was not appealed. On remand, the trial court severed the claims against Realty Associates and signed a "revised final judgment" (Revised Final Judgment) that deleted Realty Associates, leaving only the judgment against Light.

In 2021, Murphy filed an application seeking an order directing payment out of the fund; he sought to be paid $30,769.50 in actual damages, $6,053.22 in attorney's fees, $431.00 in costs of court; and $2,907.77 in prejudgment interest. *See* Tex. Occ. Code Ann. § 1101.601. Murphy attached to his application the 2017 Judgment, an abstract of judgment that he had filed in 2017, and a writ of execution that had been returned *nulla bona* in 2018. *Id.* § 1101.606.

After TREC filed a response pointing out that Murphy's application was not verified, Murphy filed an amended verified application. TREC filed a response objecting to Murphy's amended application, raising among other arguments that

- Murphy's application was based on a judgment that had been reversed, and it thus failed to meet the statutory requirements for payment from the fund;

- Because TREC was not a party to the original suit in which the judgment was granted, it had the right to a hearing to re-litigate any material and relevant issue that was determined in the underlying case;

4

- the fund is statutorily limited to payment of out-of-pocket damages, and thus Murphy could not recover mental anguish damages, and as an attorney representing himself, he was not entitled to attorney's fees;

- Murphy's case against Light was based on breach of contract, and breach of contract is not an act that implicates fund liability; and

- Murphy had not provided supporting evidence for the amounts that he had requested from the fund, including his calculation of prejudgment interest.

Murphy filed a reply stating that the fund is not limited to actual damages and that he was entitled to recovery of attorney's fees. The trial court agreed with Murphy and ordered TREC to pay the judgment from the fund.

## II. TREC's Appeal

### A. Governing Statutes

The governing statutory scheme is Chapter 1101 of the Occupations Code, which regulates the profession of real estate brokers and sales agents. Tex. Occ. Code Ann. ch. 1101. That chapter prohibits a licensed real estate broker from taking certain actions, including engaging in fraudulent or dishonest behavior while engaged in real estate brokerage. *Id.* § 1101.652(a-1), (b).

Subchapter M (the Act) requires TREC to maintain the fund, the purpose of which is "*to reimburse* aggrieved persons who suffer *actual damages* caused by an act described by Section 1101.602 committed by: . . . a license holder[.]" *Id.* § 1101.601 (emphasis added). Section 1101.602, entitled "Entitlement to *Reimbursement*," states that an aggrieved person may be reimbursed from the fund when a license holder engages in behavior prohibited by other sections of the Act:

5

> An aggrieved person is entitled to *reimbursement* from the trust account if a person described by Section 1101.601 engages in conduct that requires a license or certificate of registration under this chapter and is described by Section 1101.652(a-1)(1) or (b), if the person is a license holder, or Section 1101.653(1), (2), (3), or (4), if the person is a certificate holder.

*Id.* § 1101.602. (emphasis added). Section 1101.606 describes how an aggrieved person may apply for payment from the fund, and that process starts with the aggrieved person obtaining a judgment against the license holder for an act described by Section 1101.602. *Id.* § 1101.606.

**B. Case Law**

In 1983, the Texas Supreme Court looked at Section 1101.601's predecessor statute, which stated that "[t]he fund shall be used in the manner provided in this section for **reimbursing** aggrieved persons who suffer **monetary damages** by reason of certain acts . . . ." *See Pace v. State*, 650 S.W.2d 64, 65 (Tex. 1983) (emphasis added). In *Pace*, the issue was whether punitive damages could be reimbursed from the fund. The court noted that "Black's Law Dictionary defines 'reimburse' as 'to pay back, to make restoration, to pay that expended,'" and "[t]hus, the Act provides that the fund is to be used to *pay back* the monetary damages suffered by the victims of an unscrupulous real estate agent or broker." *Id.* (emphasis added) (citing Black's Law Dictionary 1157 (5th ed. 1979)). The court held that because "[p]unitive damages are not to restore one to his position before the act giving rise to the damages, rather they are to punish the wrongdoer and are an example to others," "the Legislature could not have intended that treble damages be paid from the fund or they would not have

6

used the words '. . . *reimbursing* aggrieved persons who suffer monetary damages. . . .'"
*Id.* (emphasis added).

The predecessor statute was amended to change "monetary damages" to "actual damages." *Arlington Equities, Inc. v. Tex. Real Est. Comm'n*, 765 S.W.2d 472, 473 (Tex. App.—Dallas 1988, writ denied). The legislature did not, however, change the word "reimbursing." In a case construing the statute after that amendment, the Dallas Court of Appeals upheld the denial of Arlington Equities's recovery from the fund for "lost profits and deception" because it had "no out-of-pocket losses." *Id.* The court held that, as amended, the Act still limited recovery to persons who had "changed [their] monetary position":

> Relying upon the legislative choice of "reimbursing" in the original act, the legislative retention of "reimbursing" in the amended act, the exclusion of mere breach of contract in *Torres* [*v. State*, 605 S.W.2d 394, 396 (Tex. App.—Beaumont 1980, no writ)], and the exclusion of punitive damages in *Pace*, we find and hold that Arlington [Equities] had expended nothing for which it was entitled to be reimbursed (as used in article 6573a [the former version of Section 1101.601]) from the fund and that Arlington [Equities] had not changed its monetary position to secure the contract [that] Fernandez breached; consequently, there was no position to which it was entitled to be restored (as described in *Pace* and *Torres*).

*Id.*

## C. Mental Anguish Damages Barred

We begin with TREC's second issue challenging a specific part of the trial court's order—the part ordering payment for Murphy's mental anguish damages—

before moving on to its first issue, which challenges the entire order. We hold that the Act does not allow payment of mental anguish damages from the fund.

In its modification of Section 1101.601's predecessor, the legislature did not change its use of the word "reimbursement." The only relevant difference between the statute construed by the *Pace* court and the version of the statute currently in effect is the change from "monetary damages" to "actual damages." *Compare Pace*, 650 S.W.2d at 65 (setting out predecessor statute), *with* Tex. Occ. Code Ann. § 1101.601 (current statute).

The "reimbursement" language in the statute has already been construed by the Texas Supreme Court. The construction does not encompass payment for damages that serve any purpose other than reimbursement.[1] *Pace*, 650 S.W.2d at 65. Further, the legislature's amendment of Section 1101.601 to use "actual damages" rather than "monetary damages" does not indicate a substantive change that would allow a broader use of the fund. The legislature could have amended the statute to use

---

[1]Two Finance Code sections with similar language allow a person to recover from a fund set up under the Finance Code to compensate persons aggrieved by an act of a licensed mortgage broker, and those statutes also use the wording "reimburse . . . for actual damages." Tex. Fin. Code Ann. § 156.501(6) (providing that the "fund shall be used to reimburse residential mortgage loan applicants for actual damages incurred"), § 341.602 (same); *see also id.* § 157.0201 (stating that the fund established in Chapter 156 "shall be used as provided by . . . Chapter 156 to reimburse residential mortgage loan applicants for actual damages incurred . . . ." (footnote omitted)). However, unlike the Act in this case, those two sections further specify that "[t]he use of the fund is limited to reimbursement for out-of-pocket losses." *Id.* §§ 156.501, 341.602.

language other than the word *reimbursement*. For example, some states' recovery fund statutes simply state that an aggrieved party may recover actual damages awarded in a judgment and do not limit recovery to actual damages that constitute reimbursement. *See, e.g.*, Ala. Code § 34-27-31; Ga. Code Ann. § 43-40-22; *see also* Del. Code Ann. tit. 24, § 2922 (providing that an aggrieved person who obtains a final judgment against a licensee for certain kinds of claims "may file a verified claim with the Commission seeking an order directing payment from the Fund of *any amount unpaid* upon the judgment," up to $25,000 (emphasis added)). The legislature chose not to make that change, and the reimbursement restriction remains in the statute.

That *Pace* addressed punitive damages rather than a type of compensatory damages does not alter our conclusion because the *Pace* court specifically stated that the Act "is to be used to *pay back* the monetary damages" suffered by an applicant. *Pace*, 650 S.W.2d at 65. Although mental anguish damages, like other elements of actual damages, function to restore an injured party to the position that the party would have been in had the wrong not occurred, *see In re Cent. Or. Truck Co.*, 644 S.W.3d 668, 670 (Tex. 2022) (orig. proceeding), mental anguish damages cannot be characterized as "paying back" for something expended or compensating the plaintiff for a change in the plaintiff's monetary position. *Cf. Arlington Equities*, 765 S.W.2d at 473. Mental anguish damages compensate a plaintiff for harm, but they do not "pay back" the plaintiff for something the plaintiff expended. We sustain

TREC's first issue, and we will modify the trial court's order to delete the amount for mental anguish damages.[2]

**D. Murphy's Entitlement to Payment for the Remaining Judgment**

TREC's first issue asserts that the trial court erred by ordering the fund to pay any of the 2017 Judgment. Its argument is that the trial court ordered payment from the fund for a judgment that was not the actual final judgment and that Murphy did not satisfy the Act's procedural requirements for payment of the final judgment:

> Murphy recorded an abstract of judgment on August 8, 2017, the date the final judgment was signed. A writ of execution was also returned nulla bona on May 21, 2018. However, the trial court signed a Revised Final Judgment in this case on March 3, 2021, after the default judgment had been appealed, reversed, and remanded. There can be only one final judgment in this case. Murphy's Application for Order Directing Payment Out of the Recovery Trust Account attached the August 8, 2017 default judgment as well as the writ and abstract of that judgment, even though the 2017 [J]udgment was reversed, and a revised judgment was signed in 2021. Because [Section] 1101.606(a) includes the statutory language allowing for recovery only "after final judgment is entered," Murphy's Application should have been based on the Revised Final Judgment. Further, Murphy failed to comply with the statutory requirements contained in [Section] 1101.606(a) because the writ of execution and abstract of judgment did not reference the Revised Final Judgment but instead referred to the [2017 J]udgment that was superseded by the Revised Final Judgment. [Citations and record references omitted.]

---

[2]It is worth noting that the Act caps the recovery from the fund at $50,000, meaning that the Act is not necessarily intended to make a claimant whole. *See* Tex. Occ. Code Ann. § 1101.610; *contra Goldman v. Olmstead*, 414 S.W.3d 346, 357 (Tex. App.—Dallas 2013, pet. denied) (stating, in a case not turning on interpretation of Section 1101.601, that "the occupations code sets out a procedure by which a person injured by a license holder's violation of section 1101.652(a)(3) can be made whole through the payment of a claim from" the fund).

TREC also contends that Murphy's pleadings do not support payment from the fund because the pleadings' factual allegations support only a breach of contract claim, and the fund does not pay judgments based on breach of contract. Finally, TREC argues that because it was not a party to the suit in which the 2017 Judgment was rendered, it is entitled to have the entire case retried.[3] We address these arguments in reverse order.

### 1. TREC is not entitled to a retrial

Under Section 1101.608(a) of the Act, when TREC receives notice that someone has filed a verified claim for payment under Section 1101.606, TREC may agree to pay the claim, or it may "notify the attorney general of [its] desire to schedule a hearing, enter an appearance, file a response, appear at the hearing, defend the action, or take any other action [that it] considers appropriate." Tex. Occ. Code Ann. § 1101.608(a). At that hearing, TREC "*may* relitigate . . . any material and relevant issue that was determined in the action that resulted in the judgment, including an agreed judgment, in favor of the aggrieved person." *Id.* § 1101.608(c) (emphasis added); *Tex. Real Est. Comm'n v. Bayless*, 366 S.W.3d 808, 815 (Tex. App.—Fort Worth 2012, pet. denied). Thus, at the hearing on Murphy's application for payment, TREC

---

[3]It is not clear from TREC's brief whether it argues that Section 1101.608 allows it a do-over or whether it raised its right to relitigate issues merely to head off any argument by Murphy that TREC's arguments in the trial court constituted an impermissible collateral attack on the underlying judgment. To the extent that TREC intended the former, we address the argument.

could have opted to relitigate any issue that resulted in the underlying judgment. *See* Tex. Occ. Code Ann. § 1101.608(c).

TREC's attorney raised its right to relitigate at the hearing. In its argument to the trial court, the attorney asserted that

> since TREC [wa]s not there at the default hearing, we're entitled to have some—basically have some evidence put on of the fraud. We would like to ask—if you're inclined to find that this is a fraud judgment that the fund is liable for, we would request a few minutes to inquire some of the evidence of Mr. Murphy as to the evidence of fraud. That's all I have at this point.

The trial court then allowed Murphy to respond. In Murphy's argument, he stated that he believed that he had "provided everything to [TREC] at a meeting before even having this hearing"; that he believed that he had "actually included the entire transcript," and if he had not, he could do that if TREC's attorney "wants to revisit the evidence"; that he had proved everything that he needed to at the hearing; and that "[i]f they want to relitigate it, they have that right, but it's going to cost them because, of course, attorney's fees will be incurred doing that." The trial court then asked, "Anything further?" TREC's attorney responded, "I don't believe so, no, ma'am."

As TREC and Murphy both recognized at the hearing, if TREC wanted to make Murphy re-prove his case against Light, it could have. Instead, TREC told the trial court that it had nothing further. TREC did not object that it was denied the

12

opportunity to relitigate the fraud claim or that the trial court had not ruled on its request. *See* Tex. R. App. P. 33.1.

The language of Section 1101.608 does not authorize TREC to participate in the hearing on Murphy's application, tell the trial court that it had nothing further rather than objecting that it wanted to relitigate an issue, get an unfavorable ruling, and then, on appeal, obtain a second hearing on issues it could have pursued in the first hearing but chose not to. To the extent it argues that we should reverse for it to have another hearing, we reject that argument.

## 2. The underlying judgment supports Murphy's application

TREC's next argument is that Murphy's pleadings support a judgment only on a breach of contract claim for which payment from the fund is not allowed and that, at the hearing on Murphy's application, he presented no evidence to support his claim that Light's actions fit into one of the categories implicating the fund's liability.

The Act requires an applicant for payment to show at the hearing, among other things, "that the *judgment* is based on facts allowing recovery" under the Act. Tex. Occ. Code Ann. § 1101.607 (emphasis added). Thus, the starting place for determining the application is the underlying judgment. The trial court's order directing payment states that the court had previously "rendered judgment (the Judgment) in favor of [Murphy] and against [Light] based on facts allowing recovery under Tex. Occ. Code § 1101.652(b)." We agree with the trial court.

Looking at Murphy's pleadings, as TREC asks us to do, Murphy alleged that Light had agreed to pay to him "any and all fees/commissions received by Realty Associates and Light from the purchase, less the sum of two hundred ($200.00) dollars" and that Light had not followed through on that promise. TREC is correct that these fact allegations could have supported a breach of contract claim if Murphy had proved that the promised payment was a term in an agreement with Light and had further proved the other breach-of-contract elements. *See Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019) (setting out breach-of-contract elements).

However, a promise to perform an act can also support a fraud claim or a DTPA claim if that promise was false when made. *See* Tex. Bus. & Com. Code Ann. § 27.01; *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992); *Torres*, 605 S.W.2d at 396; *see also In re Rhee*, 481 B.R. 880, 893 (Bankr. S.D. Tex. 2012) (holding that real estate broker's false promise to rebate commission to home purchasers was a violation of the DTPA); *D'Olivio v. Fox*, No. 05-18-00868-CV, 2020 WL 4047868, at *11 (Tex. App.—Dallas July 20, 2020, pet. denied) (mem. op.) (noting that failure to comply with contract alone does not violate the DTPA but "an initial misrepresentation inducing a party to enter into a contract the person making the representation had no intention of performing" violates the DTPA). Accordingly,

14

Murphy's pleadings do not support TREC's argument that the 2017 Judgment could have been based only on a breach of contract claim.[4]

Further—and importantly—the judgment awarded Murphy exemplary damages, which he requested only in connection with his fraud in a real estate transaction and DTPA claims, and which are not recoverable on a breach of contract claim. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 304 (Tex. 2006). The judgment further awarded Murphy mental anguish damages, which he requested under only his claims for DTPA violations. Thus, the judgment could not have been based on Murphy's breach of contract claim and could only have been based on his DTPA allegations, a claim for which payment from the fund is permitted. Tex. Occ. Code Ann. § 1101.607.

Additionally, the economic damages awarded to Murphy could be construed as reimbursement because they compensated him for his change in monetary position due to Light's misrepresentation.[5] Murphy suffered a pecuniary loss of the

---

[4]At the hearing, Murphy asserted that it was "clear from the pleadings, this is a judgment based on fraud and DTPA on a real estate transaction."

[5]Under this issue, TREC does not argue that the economic damages award did not compensate Murphy for out-of-pocket losses. However, TREC does assert in one sentence that "no order for payment from [the fund] can be affirmed since there is no pleading or evidence to support it." Further, under a separate issue, TREC argues that Murphy's pleadings do not assert that he paid any amount for which he sought reimbursement. We therefore assume that, taking TREC's brief as a whole, it fairly includes an argument that the 2017 Judgment's damages award did not reimburse Murphy for losses.

$10,769.50 that he did not receive, and this loss was not merely the lost expectation of profit from a business deal. Murphy specifically pled that he would not have entered into the transaction but for Light's misrepresentation. Because of Light's misrepresentation, Murphy agreed to pay X amount to buy his home and to receive $10,769.50 in return, such that his out-of-pocket cost for the purchase was X minus $10,769.50.[6] Because of Light's actions, Murphy's purchase ultimately cost him an extra expenditure of $10,769.50. The economic damages awarded in the 2017 Judgment reimbursed Murphy for the extra purchase cost, which he incurred because of Light, and he therefore may recover the amount of that award from the fund. *See Pace*, 650 S.W.2d at 65. We reject this part of TREC's first issue.

### 3. Murphy satisfied the Act's requirements as to the judgment against Light

Finally, we address TREC's argument that Murphy did not satisfy the Act's requirements for payment because he did not file his verified claim in the trial court "after *final* judgment is entered, execution returned *nulla bona*, and a judgment lien perfected" as required by the Act. *See* Tex. Occ. Code Ann. § 1101.606(a) (emphasis

---

[6]Murphy attached to his brief a transcript of the hearing resulting in the 2017 Judgment, and in addressing TREC's arguments about the basis for that judgment, he references his testimony from that hearing about the circumstances of his house purchase. However, that transcript is not a part of the appellate record, and we therefore do not consider it. *See* Tex. R. App. P. 34.1; *Fibela v. Wood*, 657 S.W.3d 664, 672 (Tex. App.—El Paso 2022, no pet.).

added). Its argument hinges on its contention that the 2017 Judgment was not a final judgment for purposes of Section 1101.606.

The trial court signed the 2017 Judgment on August 8, 2017. Light did not appeal, and accordingly, that judgment became final as to Light.[7] *See George v. Vick*, 686 S.W.2d 99, 100 (Tex. 1984) (stating that when "[n]o party appealed from the trial court's judgment insofar as it disposes of the actions by and against [a party], [t]he trial court's judgment as to [that party] is affirmed"); *Snively Royalty Analysis, LLC v. Panchasarp*, No. 05-19-00577-CV, 2020 WL 2079179, at *1 n.1 (Tex. App.—Dallas Apr. 30, 2020, no pet.) (mem. op.) (stating, in appeal from multi-party litigation, that trial court's judgment had become final as to party who had not appealed); *Klement v. Munder*, 619 S.W.2d 31, 32 (Tex. App.—El Paso 1981, no writ) (same). Murphy then satisfied the requirements of Section 1101.606(a) by filing an abstract of judgment on September 28, 2017, *see* Tex. Prop. Code Ann. § 52.001 (setting out how to establish a judgment lien), and by obtaining a writ of execution that was returned *nulla bona* on August 17, 2018. Murphy thus satisfied the requirements of Section 1101.606(a). *See* Tex. Occ. Code Ann. § 1101.606(a).

This court then reversed the 2017 Judgment as to Realty Associates but did nothing regarding the judgment against Light because, as stated, Light did not appeal.

---

[7]The Revised Final Judgment recognized the finality of the 2017 Judgment in that it awarded prejudgment interest from the time that the underlying suit was filed until the date of the 2017 Judgment rather than the date of the Revised Final Judgment. *See* Tex. Fin. Code Ann. § 304.104.

*See Latter & Blum*, 2019 WL 3755765, at *9 (stating that we were reversing the trial court's judgment "as to [Realty Associates] *only*" (emphasis added)). On remand, the trial court did not alter the final judgment against Light, and it had no authority to alter the judgment had it so desired. *See Spicer v. Maxus Healthcare Partners, LLC*, No. 02-21-00423-CV, 2023 WL 2033774, at *2 (Tex. App.—Fort Worth Feb. 16, 2023, no pet. h.) (mem. op.); *United Res., L.P. v. Sepco Tubulars, Inc.*, No. 04-12-00663-CV, 2014 WL 3339537, at *4 (Tex. App.—San Antonio July 9, 2014, no pet.) (mem. op.). Consequently, the court's subsequent signing of the Revised Final Judgment to delete references to Realty Associates could not alter its judgment as to Light, did not affect the finality of the 2017 Judgment as to Light for purposes of Section 1101.606, and did not erase Murphy's already-completed compliance with Section 1101.606.

Section 1101.606(a)'s requirements ensure that the fund provides payment only for uncollectible judgments. *See* Tex. Occ. Code Ann. § 1101.606(a). Murphy satisfied the Act's requirements and the purpose of those requirements, and that purpose would not be served by our holding otherwise. We overrule the remainder of TREC's first issue.

**F. Attorney's Fees and Pre-Judgment Interest**

In its third issue, TREC challenges the award of $6,053.22 in attorney's fees. It also complains that the prejudgment interest awarded was presumably and erroneously based on the eighteen percent interest rate set out in the 2017 Judgment.

Regarding the interest rate, the parties agree that the Finance Code controls the calculation of prejudgment interest here, and Murphy concedes that the prejudgment interest should have been calculated at five percent.[8] However, he further contends that he requested interest at five percent in his application for payment from the fund, and he asserts that the trial court ordered interest at that rate.[9] We agree with TREC that the trial court did not calculate prejudgment interest at five percent.

A calculation of simple interest based on the economic damages award of $10,769.50 at a rate of eighteen percent over eighteen months (the number of months between when Murphy filed his original petition and when the trial court rendered its 2017 Judgment) yields the exact amount of prejudgment interest awarded by the trial court: $2,907.77. We therefore agree with TREC that the trial court apparently calculated prejudgment interest at eighteen percent for eighteen months.[10]

---

[8]A money judgment on a contract that provides for interest may earn postjudgment interest—and therefore prejudgment interest—at eighteen percent. Tex. Fin. Code Ann. § 304.002; *E.F. Johnson Co. v. Infinity Glob. Tech.*, No. 05-14-01209-CV, 2016 WL 4254496, at *11 (Tex. App.—Dallas Aug. 11, 2016, no pet.) (mem. op.). However, as we have held, the judgment in this case was not based on a contract claim.

[9]Regarding postjudgment interest, the order on appeal states that the underlying judgment "is accruing interest at the rate of 5% per annum pursuant to Tex. Fin. Code [Ann.] § 304.003." It does not, however, state the rate on which the trial court calculated prejudgment interest.

[10]The Finance Code dictates the period of time on which prejudgment interest accrues. *Citizens Nat'l Bank v. Allen Rae Invs., Inc.*, 142 S.W.3d 459, 486–87 (Tex. App.—Fort Worth 2004, no pet.). That period begins on "the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed" and ends

19

Murphy asserts that the trial court must have applied a five percent interest rate because an eighteen percent interest rate would have amounted to more than $8,000 in prejudgment interest. That would be true if the 2017 Judgment had awarded prejudgment interest on the mental anguish damages as well as on economic damages and if the order directing payment from the fund had then calculated prejudgment interest based on that award. However, the 2017 Judgment ordered prejudgment interest on only the $10,769.50 in economic damages.[11] Simple interest on $10,769.50 calculated at an eighteen percent rate for the applicable period does not result in over $8,000 in interest—as we have stated, it results in the exact amount awarded.

We sustain this part of TREC's third issue. *See Roberts v. Jay Fuller Enters., LLC*, No. 12-20-00134-CV, 2021 WL 1047052, at *7 (Tex. App.—Tyler Mar. 18, 2021, no pet.) (mem. op.). We will remand this case to the trial court to recalculate the prejudgment interest. *See McGee v. Tatum*, No. 05-21-00303-CV, 2022 WL 17248174, at *8 (Tex. App.—Dallas Nov. 28, 2022, no pet.) (mem. op.).

---

"on the day preceding the date judgment is rendered." Tex. Fin. Code Ann. § 304.104. Prejudgment interest "is computed as simple interest and does not compound." *Id.*

[11]Simple interest on $30,769.50 (the economic and mental anguish damages together) at five percent yields a figure that is close but not equal to the amount awarded by the trial court. Thus, even if the trial court had included the mental anguish damages in its calculation, it could not have been using a five percent rate.

Regarding attorney's fees, TREC asserts that because Murphy represented himself, under *Jackson v. State Office of Administrative Hearings*, 351 S.W.3d 290, 300 (Tex. 2011), Murphy could not recover attorney's fees. TREC argues that the Texas Supreme Court's more recent decision in *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469 (Tex. 2019), does not allow a different result. This court has already held otherwise—we have pointed out that in *Rohrmoos*, the supreme court "acknowledged that . . . an attorney may recover fees for representing himself." *J. Michael Ferguson, P.C. v. Ghrist Law Firm, PLLC*, No. 02-18-00332-CV, 2021 WL 2006321, at *20 (Tex. App.—Fort Worth May 20, 2021, pet. denied) (mem. op.).

Further, in *Jackson*, the statute being considered authorized a trial court to award "reasonable attorney['s] fees incurred by a plaintiff," and the supreme court's holding was based on its conclusion that the plaintiff representing himself had not *incurred* attorney's fees "because he did not at any time become liable for attorney's fees." *Id.* at 299–300. In its reply brief, TREC argues that we should not allow recovery of attorney's fees here because the fund is limited to compensating out-of-pocket losses, and Murphy suffered no out-of-pocket losses in representing himself.

Unlike the statute in *Jackson*, however, the attorney's fees provision at issue here does not include the word *incurred*. TREC's argument essentially attempts to graft onto Section 1101.610 the *incurred* language from the statute in *Jackson*, and it ignores the fact that the Act's authorization for awarding reasonable attorney's fees is separate

21

from the provision for reimbursement of damages. *See* Tex. Occ. Code Ann. § 1101.610. The attorney's fees provision specifically authorizes the recovery of "reasonable attorney's fees in the amount determined by the court." Because the Act authorizes recovery of reasonable attorney's fees, and an attorney representing himself may recover the reasonable fees for his services in representing himself, the trial court was authorized to order payment of Murphy's reasonable attorney's fees. We overrule the remainder of TREC's third issue.

### III. Murphy's Cross-Point

Murphy's sole cross-point asserts that TREC's appeal is moot. After Murphy obtained the order directing payment from the fund, TREC requested and received from Murphy a partial assignment of the judgment against Light. Murphy argues that, as such, TREC cannot change its mind "after requesting and accepting an assignment of the underlying judgment and entering into a Rule 11 agreement obligating it to pay the assigned judgment amount." He contends that TREC "should not be allowed to mislead [him] into believing that the controversy is over by requesting and receiving an assignment of the judgment under a Rule 11 agreement and later refus[ing] to honor the agreement and fil[ing] an appeal relating to the judgment it has been assigned."

TREC responds that the Act requires it to obtain an assignment of the judgment on which payment is made from the fund and that any email discussions between TREC's attorney and Murphy regarding preparation and execution of the

assignment do not satisfy the requirements for a Rule 11 agreement. *See* Tex. R. Civ. P. 11; Tex. Occ. Code Ann. § 1101.612(a), (c) (providing that "[TREC] is subrogated to all rights of a judgment creditor to the extent of an amount paid from the trust account, and the judgment creditor *shall* assign to [TREC] all right, title, and interest in the judgment up to that amount" (emphasis added) and that TREC "shall deposit any amount recovered on the judgment to the credit of the trust account").

We have reviewed the emails in the record on which Murphy bases his Rule 11 argument, and we agree with TREC that they do not support Murphy's argument. *See* Tex. R. Civ. P. 11. There is no agreement "in writing, signed[,] and filed with the papers as part of the record" that TREC would not appeal from the trial court's order. TREC represented in the emails that the Act required Murphy to "assign [his] interest in the judgment up to the amount ordered paid from the Fund," but it said nothing about appealing the order.

As for Murphy's other argument under his cross-point, he asserts that "[b]y requesting and accepting the partial assignment, [TREC] has waived its right to appeal[,] and [the appeal] should be dismissed." However, in each of the cases that he cites to support this assertion, the appellant had satisfied the judgment from which it appealed. *See Highland Church of Christ v. Powell*, 640 S.W.2d 235, 236–37 (Tex. 1982) (holding appeal not moot because judgment paid under duress, and citing *Guajardo v. Alamo Lumber Co.*, 317 S.W.2d 725, 725–26 (Tex. 1958), which involved discharge of indebtedness by petitioner and held that appeal was moot because appellant garnishee

discharged the garnishment judgment and then took an assignment of the underlying judgment); *Hudler-Tye Const., Inc. v. Pettijohn & Pettijohn Plumbing, Inc.*, 632 S.W.2d 219, 223 (Tex. App.—Fort Worth 1982, no writ); *Otto v. Rau Petroleum Prods.*, 582 S.W.2d 504 (Tex. App.—Houston [1st Dist.] 1979, no writ). *But see Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002) ("The Texas rule is not, and never has been, simply that any payment toward satisfying a judgment, including a voluntary one, moots the controversy and waives the right to appeal that judgment."). Here, Murphy does not contend that TREC has already paid the order being appealed, and he directs us to nothing in the record to establish that it has been paid.[12] We overrule Murphy's sole cross-point.

## IV. Conclusion

Because we have overruled Murphy's cross-point and have sustained TREC's second issue, we reverse the part of the trial court's order directing TREC to pay from the fund the mental anguish damages award, and we modify the order to reduce the amount ordered to be paid by $20,000. Having further sustained part of TREC's third issue, we remand the case to the trial court to recalculate the prejudgment interest.

---

[12] The assignment states that TREC has paid Murphy $40,161.49 and that, in consideration of that payment, TREC has the right to collect up to that much of the judgment from Light. However, the emails sent in connection with this assignment's signing make clear Murphy was executing the assignment before TREC made any payment from the fund, and thus the assignment's language is not sufficient to show that TREC has satisfied the trial court's order. Notably, Murphy does not argue on appeal that TREC has paid the order.

Finally, having overruled TREC's second issue and the remainder of its third issue, we affirm the trial court's order in all other respects.

/s/ Mike Wallach
Mike Wallach
Justice

Delivered: April 13, 2023